

# THE ATTORNEY GENERAL
# OF TEXAS

Gerald C. Mann                    AUSTIN 11, TEXAS
ATTORNEY GENERAL

Honorable Tom C. King
State Auditor and Efficiency Expert
Austin, Texas

Dear Sir:                    Opinion No. O-1662

Re: May payments of principal and
interest be made out of college
funds for the retirement of
Dormitory Revenue Bonds?

Your request for an opinion has been received by this office.
We quote from your letter as follows:

"An audit of one of the State Teachers Colleges of Texas,
reveals that on October 1, 1934 the College executed a
bond issue to secure a grant of the Public Works
Administration, an agency of the Federal Government, to
make possible the erection of a new boys' dormitory.
The bonds are labeled 'Boys' Dormitory Revenue Bonds'.

"This action was taken under authority of Chapter 5,
Acts 2nd C. S., 43 rd legislature, which became
effective February 16, 1934. That act authorizes
such bonds to be issued, 'without cost to the State of
Texas', and continues:

'Sec. 2 That said Boards are further authorized
to make any contract with reference to the
collection and disposition of the revenues derived
from any building so constructed in the acquisition
or construction, management and maintenance of any
building or buildings acquired hereunder, and in
anticipation of the collection of such revenues,
and for the purpose of paying the cost of the
construction or acquisition of said building or
buildings and grounds said boards are severally
empowered by resolution to authorize, sell, and
deliver its negotiable bonds or notes from time
to time and in such amount or amounts as it may
consider necessary. Any bond or notes issued
hereunder shall bear interest at not to exceed
six per cent per annum, and shall finally mature
not more than forty years from date.

'Sec. 3 Subject to the above restrictions each of said boards is given complete discretion in fixing the form, conditions, and details of such bonds or notes. Any bonds or notes issued hereunder shall not be an indebtedness of the State of Texas, but shall be payable solely from the revenues to be derived from the operation of said buildings'.

"The resolution of the Board of Regents authorizing the issuance of the Dormitory Bonds sets forth the form in which they are to be drawn. This prescribed form contains, among others, the following provisions:

'This bond . . . . is payable solely from the Bond Fund of said college created for that purpose from the revenues to be derived from the operation of said Project, all as provided by the constitution and laws of the State of Texas and particularly Chapter 5 of the Acts of the 2nd C.S. of the 43rd legislature of Texas and as provided in that certain resolution of the Board of Regents . . .'.

' . . . . the holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation . . .'.

"The resolution further provides,

'Section 8 That subject only to the payment of reasonable costs for operation and maintenance of the Project to be constructed with the proceeds of the sale of said bonds, the gross revenues to be derived from the operation of said project are hereby irrevocably pledged to the payment of principal of and interest on the bonds herein authorized . . . .'

"All payments on interest and principal for the retirement of these bonds have been regularly made; but the revenues from the building, after payment of the expenses of its operation, have been consistently insufficient for the purpose and have been supplemented by withdrawals from other local funds of the college to meet the deficiency.

"Your opinion is respectfully requested on the following questions:

(1) Under the laws and the authorized terms of the bonds, can payments for the retirement of their principal and interest be lawfully made out of College Funds other than the gross revenues of the project, with reasonable operation and maintenance costs deducted?

(2) If payments are made from other sources than such 'gross revenues' do they constitute a claim on behalf of

the College and against the bond holders?"

Our answer to your first question is that under the laws and the authorized terms of the bonds in question, payments for the retirement of their principal and interest cannot be lawfully made out of college funds other than the gross revenues of the Project, with reasonable operation and maintenance costs deducted. As pointed out in your letter, and quoted above, the bond expressly provides that it can in nowise be construed to be a liability against the State. Furthermore, Chapter 5, Acts of the Second Called Session, Forty-third Legislature, the Act under which these bonds were issued, provides that such bond shall be payable solely from the revenues to be derived from the operation of said building. The power of the regents to execute the bonds and to provide for the payment of the loan out of the revenues from said building over a period of years is exempt from the constitutional prohibitions in Article 3, Sections 49 and 50 and Article 8, Section 6, solely because no debt against the State is created and there is no pledging of the credit of the State, nor is there any appropriation of public funds in the pledging of the revenues from the building.

It would seem, therefore, clearly to follow that an appropriation of public funds, either from the general fund in the State Treasury or from local or institutional funds, would be in violation of Article 3, Section 44 of the Constitution, which provides, in part, that the Legislature shall not "grant, by appropriation or otherwise, any money out of the Treasury of the State to any individual, on a claim, real or pretended, when the same shall not have been provided for by preexisting law * * *".

There being no liability against the State because of the construction of said building under the expressed terms of the contract and of the statutes authorizing the construction of the building, there would be no "preexisting law" to serve as the basis of the appropriations of any public funds to repay the loan and such appropriations would be in violation of Article 3, Section 44. Fort Worth Calvary Club vs. Sheppard, 83 S.W. (2d) 660.

We believe that the same prohibition would apply to local funds as well as to funds which had been deposited in the State Treasury. This department has previously ruled that similar fees collected by the Department of Education are public funds. See Conference Opinion No. 3012, dated February 3, 1938, by Assistant Attorney General Wm. J. Kemp, addressed to Honorable Tom C. King, State Auditor and Efficiency Expert, and found in the published opinions of the Attorney General, 1936-38, page 127.

Furthermore, we wish to direct your attention to the fact

that the local funds of an educational institution have been
treated by the Legislature as public funds, in that they have
been approrpiated to such institutions in the General
Educational Appropriation Bill. House Bill #255, Acts of the
Regular Session of the Forty-sixth Legislature, 1939. Sub-
division 3 of the general provisions attached to said bill
provides as follows:

"Subdivision 3. Institutional Receipts. No property
belonging to any of the institutions provided for, or
any agency thereof, shall be sold or disposed of without
the consent of its governing board, and all proceeds from
the sale of such property, from labor performed, from the
sale of materials, crops and supplies, from fees and any
and all other receipts shall become and are hereby
appropriated as maintenance or contingent fund to be
expended under the direction and with the approval of the
governing board having jurisdiction. Said governing boards
are authorized to use out of the proceeds of said receipts
and funds, in accordance with the provisions of this Act,
such amounts as they shall deem necessary for the support,
maintenance, operation and improvements of said in-
stitutions. Any balances remaining to the credit of any
of said institutional local funds at said institutions or
in the State Treasury at the end of any fiscal year are
hereby reappropriated for the above mentioned purposes
for the succeeding year."

We believe that there should be no distinction made between funds
required by law to be deposited in the State Treasury and local
educational or institutional funds, which under the statute may
be retained and placed in depository banks by the Board of
of Regents of the State Teachers Colleges, and that the Board
of Regents would not be authorized to use either appropriations
from the general fund or such local or institutional funds in
payment of the bonds mentioned in your letter.

In reply to your second question you are advised that this is a
question of fact as well as of law and it is necessary that we
have additional information before we can determine whether or
not the College may maintain an action against the bondholders
for recovery of payments made out of the local funds.

Trusting that this answers your questions, we are

Very truly yours
ATTORNEY GENERAL OF TEXAS
s/ Claud O. Boothman
COB-s/cg                        By
                                    Claud O. Boothman
APPROVED FEB. 27, 1940                Assistant
s/ W. F. Moore
FIRST ASSISTANT ATTORNEY GENERAL      Considered and approved in
                                      limited conference